IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL R. CARNEY, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 13-4905 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISISONER OF | : | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                     **March 29, 2016**

## MEMORANDUM

Before the Court are the Objections of Paul Carney ("Plaintiff"), (Dkt No. 22 [hereinafter Objs.]), to the Report and Recommendation ("R&R") from the Honorable Marilyn Heffley, United States Magistrate Judge. (Dkt No. 20 [hereinafter R&R].) After careful consideration of the full record, Plaintiff's Objections, (Objs.), and the Acting Commissioner of the Social Security Administration's Response, (Dkt No. 25 [hereinafter Resp.]), the Court overrules Plaintiff's objections, adopts Judge Heffley's R&R in its entirety, and orders that Plaintiff's request for review is denied.

### I.    Standard of Review

Objections to the Magistrate Judge's R&R are entitled to *de novo* review. 28 U.S.C. § 636(b)(1)(C). However, the review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 32 U.S.C. §§ 405(g), 1382(c)(3); *see also Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). Substantial evidence is difficult to precisely define; it "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 522, 565 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). In determining the existence of substantial evidence to support

an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## II. Background
### a. Procedural History

Plaintiff is a fifty-five year old man with a tenth-grade education, who previously worked as a loader/unloader of trucks, a delivery driver, and a warehouse supervisor. (Dkt No. 11, Administrative Record [hereinafter R] at 140, 154-60.) Plaintiff claims that he became unable to work on March 22, 2010 due to pain in his back and left leg. (R at 58-59.) In December 2010, Plaintiff filed an application for disability insurance benefits ("DIB"). (R at 127.) The state agency initially denied the application. (R at 67.) Plaintiff filed a timely request for hearing. (R at 79.) A hearing was held before the Honorable Paula Garrety, Administrative Law Judge ("ALJ"). (R at 37.) The ALJ found that Plaintiff was not disabled. (R at 21-36.) Plaintiff timely appealed the ALJ's decision to the Appeals Council. (R at 1-5.) The Appeals Council affirmed the decision of the ALJ, thereby denying Plaintiff's request for review. (R at 1-5.) Plaintiff timely filed this action in Federal Court. (Dkt No. 1.)

The parties filed Plaintiff's Brief and Statement of Issued in Support of Request for Review, (Dkt No. 16 [hereinafter Br.]), and Defendant's Response. (Dkt No. 17 [hereinafter Resp.]) The Honorable Marilyn Heffley, United States Magistrate Judge ("USMJ"), filed a Report and Recommendation affirming the ALJ's ruling, and denying Plaintiff's request for review. (Dkt No. 20 [hereinafter R&R].) Plaintiff timely filed objections thereto. (Dkt No. 22 [hereinafter Objs.].) Defendant responded to the Objections. (Dkt No. 25 [hereinafter Objs. Resp.].)

### b. ALJ's Opinion

The ALJ found that Plaintiff had severe impairments including degenerative disc disease of the lumbar spine, and bilateral carpal tunnel syndrome. (R at 26.) These impairments, neither alone nor in combination, were of sufficient severity to qualify as a listed impairment. (R at 27-28.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), as limited to "simple routine tasks that involved only lifting 10 pounds with no bending or twisting." (R at 28.)

c.  **Objections**

Plaintiff makes three objections that the USMJ incorrectly affirmed the ALJ's decision by: (1) giving little weight to the opinion of Plaintiff's treating physician, Michael Avallone, Jr., D.O. and to give great weigh to the opinion of Greg Anderson, M.D.; (2) disregarding Plaintiff's testimony regarding his symptoms and limitations as not credible; and (3) failing to include applicable limitations in the ALJ's hypothetical. (Objs. at 6-10.)

III.    **Discussion**

a.  **The ALJ committed no error in affording the opinions of Plaintiff's non-treating physician more weight than Plaintiff's treating physician. The Court affirms the opinion of the USMJ.**

A treating physician's opinion is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2). The ALJ may reject a treating source's opinion "on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

In considering whether or not to afford a treating physician's opinion great weight, the ALJ should consider: (1) the length of the treatment relationship and the frequency of examination; (2) the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories; (3) the relevant evidence to support the opinion; (4) the consistency of the opinion with the entire record; (5) whether the doctor is a specialist in the area in which he or she is offering the opinion; (6) other factors which support or contradict the opinion. *Id.* at § 416.927(c)(2)(i)-(ii), (c)(3)-(6). Simply put, an ALJ is "not free to employ [his or her] own expertise against that of a physician" if that physician "presents competent medical evidence." *Plummer*, 186 F.3d at 429.

Plaintiff objects that "the ALJ did not amply explain the basis to reject Dr. Avallone's opinion" and to afford great weight to Dr. Anderson's. (Objs. at 7.) Plaintiff made this same argument before the USMJ. The USMJ reviewed the medical evidence in the administrative record and found that "the ALJ demonstrated in her opinion [that] the evidence contained in Carney's medical records, including diagnostic testing, did not support the limitations Dr.

Avallone would have imposed. Dr. Avallone's opinion's inconsistency with Carney's treatment records is a sufficient basis to justify the ALJ's decision to afford it little weight." (R&R at 8-9.) The Court agrees with the USMJ. The ALJ fully explained her basis for her decision to afford little weight to his opinions:

> Dr. Avallone found that the claimant would be capable of lifting/carrying less than 10 pounds occasionally in an 8 hour day; standing/walking for less than 2 hours in and [*sic*] 8 hour day; and sitting for less than 6 hours in an 8 hour day. Additionally, he would be limiting with pulling and pushing in both his upper and lower extremities. Dr. Avallone found that the claimant would never be able to perform any postural activities and he would be limited with manipulative functions...It appears Dr. Avallone relied heavily on the claimant's subjective complaints and not the objective medical evidence. The claimant's physical examinations have shown that he ambulated with a normal base and stride and he was able to heel, toe, and tandem walk. Furthermore, his muscle tone, bulk and strength were normal in all major muscle groups without atrophy, fasciculations, or involuntary movements. Treatment notes from 2010 show that his upper extremities revealed no pain, instability, or atrophy. In early 2011, diagnostic testing of his bilateral hands and wrists showed some early degenerative changes except for his right wrist, which was normal. In February 2011, it was noted that his Tinel's signs were positive bilaterally; however, the above set forth residual functional capacity assessment has taken this into account. Accordingly, the undersigned assigns little weight to Dr. Avallone's opinion, as he over-exaggerated the claimant's functional limitations.

(R at 31 (internal citations omitted.))

Second, as to Dr. Anderson, the ALJ adequately explained why she afforded Dr. Greg Anderson, M.D.'s opinion great weight:

> As for the opinion evidence, on May 17, 2010, D. [*sic*] Greg Anderson, M.D., the claimant's physician concluded that the claimant would be capable of working on a light duty status with a lifting limit of no more than 10 pounds with limited bending and twisting. This assessment is consistent with the medical evidence that shows the claimant has functional limitations with engaging in any significant lifting and carrying activities. Furthermore, the claimant testified that he has difficulty with bending and twisting due to his low back pain.

(R at 31 (internal citations omitted.)) The USMJ found that "the ALJ amply explained the basis for her decision to give greater credit to Drs. Anderson and Zaydon's opinions of Carney's functional limitations than to Dr. Avallone's. Her decision is supported by substantial evidence and consequently, entitled to judicial deference." (R&R at 10.) The Court agrees.

The ALJ's explanations as to both of these points were obviously detailed and fully realized. The question for the Court is whether the record supports the ALJ's factual statements. The ALJ's decision was primarily based on the conflict between Dr. Avallone's conclusions and

the medical record. In his report, dated April 24, 2012, Dr. Avallone determined that Plaintiff would never be able to perform any postural activities and would be limited with manipulative functions due. (R at 304-06.) This opinion was explained via checkmarks on a form. (R at 304-06.) Dr. Avallone did write on the form that Plaintiff had "severe radicular back pain. Severe weakness of upper extremities. Can't reach, pull. Chronic pain." (R at 305.) On *de novo* review, it is evident that Dr. Avallone's conclusions conflict with other medical testimony in the record, including Dr. Anderson's report.

On May 17, 2010, Dr. Anderson of the Rothman Institute Spinal Clinic, wrote a report on his consultation with Plaintiff. (R at 204-08.) In addition to conducting a physical examination, Dr. Anderson reviewed the AP lateral and flexion and extension x-rays of the lumbar spine, and the MRI of the lumbar area from April 24, 2010. (R at 205.) Dr. Anderson found that Plaintiff had "mild lower extremity weakness," no "true neurologic findings," "significant lower back pain and some numbness in his leg." (R at 205.) Dr. Anderson concluded that these finding were consistent with "degenerative disc at the L5-S1 level," with no "major nerve root compression." (R at 205.) Dr. Anderson suggested that Plaintiff "would be able to work on a light duty status with a lifting limit of no more than 10 pounds," but would need to avoid bending and twisting. (R at 205.)

These findings are confirmed by the other medical evidence in the record. For example, on July 27, 2010, Dr. Najni Sheikh, Board Certified Physiatrist, performed a EMG and Nerve Conduction Study. (R at 212.) Dr. Sheikh reported that examination of both upper and lower extremities revealed good muscle strength, except for weakness and diminished light touch sensation in certain extremities. (R at 212.) After reviewing all the tests, Dr. Sheikh concluded that Plaintiff had "bilateral L5 radiculopathy," but not "bilateral peroneal nerve entrapment neuropathy," nor "peripheral neuropathy or myopathy." (R at 212.) Similarly, Dr. Maxwell Stepanuk, Jr., D.O.'s multiple reports confirm Dr. Anderson's finding. On July 6, 2010, after physically examining Plaintiff and reviewing the MRI of the lumbar spine dated April 24, 2010, Dr. Stepanuk concluded that Plaintiff had "a disc bulge at L4 with a protrusion-type herniation," but also "good peripheral pulses with no lymphadenopathy to either upper extremity," "normal gait and station," "[n]o dorsal instability or atrophy," "no pain in either upper extremity," "normal" range of motion,  (R at 218-19.) Again, on October 12, 2010, after physically examining Plaintiff and reviewing the EMG report dated July 27, 2010, Dr. Stepanuk concluded

that Plaintiff had "bilateral L5 radiculopathy," but also that he exhibited a "normal gait and station," "no dorsal instability or atrophy," "no pain in either upper extremity," and "normal" range of motion." (R at 216-17.) On February 14, 2011, Plaintiff had an MRI taken of his thoracic spine. (R at 222.) The MRI report interpreted by Andrew Curtin, M.D., and signed by Dr. William Hartz, M.D., stated that Plaintiff had a "[t]horacic spine within the range expected for the patient's age group," and "no compression fracture or disc herniation," with "degenerative disc disease at the L5-S1-level."  (R at 222-26.) Finally, the record indicates that Plaintiff was seen by a chiropractor, Dr. Larry Segal, from July 2010 to March 2011. (R at 240-71.) Dr. Segal's notes show that while Plaintiff suffered from a "lumbar strain sprain," including "severe spasm and tenderness" in the lumbar region, Plaintiff "walked with a normal base and stride," had "normal muscle tone...without atrophy, fasciculations or involuntary movements." (R at 241-60.) Dr. Segal continually suggested the same "home care plan," and "current treatment program" due to "consistent progress" made by Plaintiff. (R at 242-60.) In conclusion, the record supports giving Dr. Avallone's opinion less weight and Dr. Anderson's opinion great weight.

Further, in Plaintiff's objections, Plaintiff asserts that the USMJ referred to Dr. Anderson as another of Plaintiff's "treating" physicians, when he was not. (Objs. at 7.) On review of the ALJ's opinion, the ALJ only referred to Dr. Anderson as Plaintiff's "physician," (R at 31), not his "treating physician" or "primary physician," as Dr. Avallone is described. Even if the ALJ was using the term "physician" to mean "treating physician," there is no error here. The ALJ does not make any error as to the number of times that Dr. Anderson saw Plaintiff. In the same sentence where the ALJ refers to Dr. Anderson as Plaintiff's "physician," the ALJ clarifies that Dr. Anderson only saw Plaintiff on May 17, 2010. (R at 31.) The ALJ is clearly not confused or mistaken about the role Dr. Anderson played in Plaintiff's care. Moreover, the ALJ's reasoning for giving great weight to Dr. Anderson's May 17th assessment is that it is "consistent with the medical evidence," (R at 31.) The ALJ is not giving great weight to Dr. Anderson based on a mistaken belief that Dr. Anderson was Plaintiff's treating physician, or that Dr. Anderson's opinion was based on multiple examinations of Plaintiff. This explanation is supported by the medical record.

Finally, Plaintiff argues that because Dr. Avallone's opinion was based on frequent examinations, but Dr. Anderson's report was based on only one examination, the ALJ's

distribution of weight was flawed. (Objs. at 7.) The number of times that a physician sees a claimant is an appropriate consideration in affording weight. However, it is not the only consideration. The ALJ found that the medical evidence record conflicted with Dr. Avallone's assessment, but accorded with Dr. Anderson's. This is a sufficient reason to afford little weight to a treating physician, and greater weight to a non-treating physician, regardless of the number of visits. The Court overrules Plaintiff's objections.

### b. The ALJ committed no error in finding Plaintiff's testimony was not credible.

Pursuant to Social Security Ruling 96-7p, an ALJ must assess Plaintiff's credibility by considering objective medical evidence and (1) the individual's daily activities; (2) the location, duration, frequency , and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul., 96-7p, 3; 20 C.F.R. § 404.1529(c)(3); *Rosenbaum v. Bernhart*, 2002 WL 32350020, at *6 (E.D. Pa. 2002). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Soc. Sec. Rul., 96-7p.

In determining the credibility of Plaintiff's assertion of subjective pain, the Court must seriously consider Plaintiff's subjective complaints of pain, even if such claims are not fully supported by objective medical evidence. *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Bittle v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971); *Taybron v. Harris*, 667 F.2d 412, 415 n. 6 (3d Cir. 1981)).

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent, and for the reasons, set forth below." (R at 30.) The ALJ explained that "the medical evidence shows that his treatment has been routine and conservative in nature." (R at 30.) The ALJ thoroughly explained the medical evidence. (R at 30-32.) The Court can find no error.

Of particular note, Plaintiff objects that "[t]here is no substantial medical evidence for example to discredit plaintiff's testimony as to the pain in his hands. On the contrary, Plaintiff's bilateral carpal tunnel syndrome was supported by positive Tinel's sign which was an objective finding." (Objs. at 9.) This argument is without merit. In explaining why she did not find Plaintiff's testimony about the "intensity, persistence and limiting effects" of his symptoms credible, the ALJ explained that "[t]he claimant has not undergone an EMG nerve study of his upper extremities, but in February 2011, his Tinel's signs were positive bilaterally." (R at 30.) Plaintiff had "normal peripheral sensation to pinprick," "he presented bilateral hand and wrist pain and swelling. Diagnostic testing of his bilateral hand and wrists showed early degenerative changes, except for the right wrist, which was normal. One year later, he noted pins and needles in his hands bilaterally and his Tinel's signs were positive bilaterally." (R at 29.) Thus, the ALJ did not ignore the objective medical evidence. Rather, she appropriately weighed the Tinel's signs against the other objective evidence in the record. On *de novo* review of the full record, as outlined in the last section, the Court agrees with the ALJ's assessment that the medical evidence does not show that Plaintiff had any disability in his extremities.

### c. The Court finds no error in the ALJ failing to explicitly consider the answer given by the Vocational Expert to Plaintiff's counsel's hypothetical.

During cross-examination of the Vocational Expert ("VE"), in response to a question posed by Plaintiff's counsel, the VE explained that if Plaintiff's ability to "finger, grip, handle, and so forth was impaired 50 percent of the time," then Plaintiff "would be unemployable." (R at 55.) Plaintiff objects that the ALJ's hypothetical to the VE was invalid because it did not contain these limitations. (Objs. at 9.) "[A] hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). However, an ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant. Instead...the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Simply put, any hypothetical posed to the VE need only include "claimant's *credibly established limitations*." *Id.* (citing *Plummer*, 186 F.3d at 431).

For the reasons outlined in the last section, the ALJ adequately explained why the medical evidence did not support a finding that Plaintiff's "ability to finger, grip, handle and so forth was impaired 50 percent of the time." Because such limitations were not "credibly established," they did not need to be included in the hypothetical. There was no error.

**IV.     Conclusion**

For the foregoing reasons, the Court overrules Plaintiff's objections, affirms the USMJ's R&R, and denies Plaintiff's request for review.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II     J.